THIRD DEPARTMENT, JULY, 1987

(July 2, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT JAMES CARDEW, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Broome County (Coutant, J.), rendered March 17, 1983, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant raises the following challenges on this appeal: (1) was the verdict supported by sufficient evidence; (2) did County Court properly admit identification evidence; (3) were defendant's statements to a jail guard the product of unlawful

interrogation; (4) should County Court have suppressed evidence seized from defendant's automobile; (5) did County Court prejudice defendant by indicating that restraints would be placed on him if he attended the trial; and (6) did County Court err by allowing hearsay testimony at trial?

Kathleen Colwell's decomposed body was found on October 31, 1982 in a wooded area in the Town of Conklin, Broome County. The cause of death could not be established because of the advanced state of the body's decomposition. Decedent had been reported missing by her parents, who had not heard from her since July 24, 1982. Decedent was an epileptic and could not go for long periods of time without her medication. On July 25, 1982, decedent's parents found her apartment in order, including her medicine, but her pocketbook and identification were missing. After this date decedent, who subsisted on Social Security checks, never cashed any checks or used her bank account. Police inquiry revealed that decedent had been at a local bar in the City of Binghamton at midnight on July 24, 1982. She was later observed at a Sip-N-Dip Donuts shop with defendant on July 25, 1982, at 2:30 A.M. Defendant's identity came to light when decedent's family found a roll of film in decedent's camera and, on developing it, found defendant pictured with decedent. Police identified defendant's picture.

During defendant's incarceration in the Broome County Jail in August 1982 on another matter, he summoned a guard requesting to speak with a detective. When the guard asked why, defendant stated that he wanted to confess to a murder. That same day, defendant confessed to several fellow inmates that he had killed decedent after she refused his sexual advances. A subsequent search of defendant's automobile was consented to by defendant's father, who had possession of the car during defendant's incarceration. Defendant had given him the keys to the car with directions to remove it from the street. A search of the car revealed a shovel and a bayonet in the trunk. The bayonet had blood on it but the nature or type of the blood was not ascertainable.

Defendant was convicted of murder in the second degree under an indictment alleging that defendant intentionally caused decedent's death. Defendant contends that since the trial evidence was circumstantial, it was insufficient to prove defendant's guilt beyond a reasonable doubt (see, CPL 70.20).

Reviewing the evidence in the light most favorable to the People (People v Malizia, 62 NY2d 755, 757, cert denied 469

US 932; *see, People v Benzinger,* 36 NY2d 29, 32), we note that in the instant case the People's burden of proof is a heavy one. The case is based on circumstantial evidence. That being so, the inference of defendant's guilt must be established with certainty. The facts from which the inference is drawn must be inconsistent with defendant's innocence and must exclude to a moral certainty every other reasonable hypothesis *(see, People v Cleague,* 22 NY2d 363, 365-366; *People v Bearden,* 290 NY 478, 480).

We conclude that the People have met their burden of proof. Defendant was the last person seen with decedent. Her body was found in a grave at an isolated place known to and frequented by defendant. Though the cause of death could not be established because of the body's advanced stage of decomposition, the People provided evidence that decedent's death was not a natural one. Her blouse showed slits in it made by a sharp instrument, which could have been the bayonet found in the trunk of defendant's car. Decedent's pants were tied in a knot. Her clothes were found underground. Her underwear, footwear, pocketbook and items of jewelry were missing. Also, defendant confessed to the crime to the jail guard and to several fellow inmates.

Defendant's contention that identification testimony was improperly admitted into evidence is without merit. The recognition of defendant from a photo first occurred on September 10, 1982 when police were attempting to find out what had become of decedent. In approaching businesses in the area she frequented, they asked a waitress at the Sip-N-Dip Donuts shop, Mary Paradis, if she recognized either person on the two photos offered for viewing. One photo was of decedent and the other of defendant. There was no information imparted that a crime had been committed or that decedent was the subject of a missing person search. The witness not only recognized the two persons as defendant and decedent, but was able to say when she saw them and to relate reasons why she remembered them. There are sufficient indications that the identification was reliable and, on the facts of this case, we conclude that the photographic identification was not unduly suggestive. Defendant's subsequent identification in a lineup was also proper.

Defendant's statements to the jail guard were properly admitted into evidence. Defendant initiated the conversation without any prompting from the guard. When he said that he wished to speak with a police detective he was asked why, to which he responded that he wanted to confess to a murder.

Defendant's statements occurred while he was in custody and represented by counsel on a burglary charge. The guard knew that defendant was represented by counsel. In such a case interrogation, albeit on a separate, unrelated charge, is precluded *(People v Bartolomeo,* 53 NY2d 225, 231). Nevertheless, County Court's admission of defendant's statement as the uninduced response to a reasonable inquiry by a jail guard seeking to clarify the nature of defendant's request was entirely appropriate. As the guard explained, prisoners often wish to leave their cells for valid as well as invalid reasons. It was, therefore, appropriate that he ask defendant why he wanted to see the detective. Defendant's statement was not the product of an unlawful interrogation *(see, People v Maerling,* 46 NY2d 289, 303).

Defendant also argues that the People used information secured from portions of defendant's further statements to the deputy, which were suppressed, to illegally obtain additional evidence (namely, evidence from his car and from other inmates to whom he confessed) and that this evidence should also have been excluded as "fruit of the poisonous tree" *(see, Wong Sun v United States,* 371 US 471). County Court rejected this argument, finding that the evidence would inevitably have been discovered in the course of normal police investigation. We concur with this conclusion.

Defendant next contends that police officers illegally seized evidence from his car (a shovel and a bayonet) on consent of his father. When defendant requested that the car be moved from the streets of Binghamton, the father moved the car to the parking lot of the Holiday Inn where he worked. Defendant's father told the District Attorney that he had authority to be in possession of the car and gave him written consent to search the car. We conclude that the searching officers' reliance in good faith on the apparent capability of the father to consent to the search, and the attendant circumstances reasonably indicating that the father did have authority to consent, made the search lawful. The items obtained as the result of such search should not be suppressed *(see, People v Adams,* 53 NY2d 1, *cert denied* 454 US 854).

Defendant contends that County Court's decision to use restraints deprived defendant of his right to confer with counsel because it caused him to choose to absent himself from the trial. We find no merit to these contentions. Defendant refused to participate in the trial before County Court alluded to any restraints. Also, in view of defendant's violent behavior at the suppression hearing, County Court's decision

to use restraints was entirely appropriate. County Court adequately articulated its reasons on the record and counseled defendant on his right to attend the trial (see, People v Hope, 67 AD2d 754).

Defendant contends that County Court erred in allowing the People to elicit hearsay testimony to undermine defendant's contention that decedent was alive after July 25, 1982. The People called decedent's aunt, Thelma Forrest, to testify that decedent had told her that she had met Robert Applegate on July 17, 1982 and not on July 31, 1982, as Applegate had testified. Defendant objected to Forrest's testimony on the ground that it related to a collateral matter and its use was an improper contradiction (see, Halloran v Virginia Chems., 41 NY2d 386). The testimony was clearly not a collateral matter. It was significant as to defendant's contention that decedent was alive after the date the prosecution contended she was last seen alive and in defendant's company. The People were thus entitled to introduce relevant evidence concerning the day decedent and Applegate met.

Defendant also contends that the testimony of Forrest was hearsay and not admissible under any of the exceptions to its use (see, CPL 60.10). We concur. The statement was offered for its truth. Decedent's statement to Forrest did not fall within any of the hearsay exceptions (see, People v Nieves, 67 NY2d 125). We cannot say, however, that this solitary erroneous inclusion of hearsay evidence created a " 'substantial probability of irreparable prejudice' " to defendant (People v Wing, 63 NY2d 754, 755, quoting Matter of Leon RR, 48 NY2d 117, 122).

We find that defendant's other allegations of error are meritless or have not been preserved for review. We thus decline to address them.

Judgment affirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.