■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER THOMAS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Aiello, J.), rendered September 10, 1985, convicting him of manslaughter in the first degree (10 counts) and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of killing 10 people in Brooklyn on April 15, 1984, in what has become known as the Palm Sunday Massacre. During the investigation of the case, police sought to search the Bronx home in which the defendant had previously lived with his family until March 28, 1984, when a fire damaged the premises.

The tax rolls showed the Bronx house was owned by Mrs. Rena Edwards, the defendant's mother-in-law. The mortgage and fire insurance listed the owners as Mrs. Edwards and the defendant's mother. On May 22, 1984, Mrs. Edwards gave her consent to police to search the premises. After informing the police that the home was boarded up, that she was the owner, but that she did not have a key with her at that time, that the utilities had been cut off, and that the back door was not unlocked but it was warped shut, Mrs. Edwards gave a written consent to search the house. The search yielded a spent shell casing which police found had been shot from one of the guns which had been used in the Brooklyn killings.

The defendant alleges that Mrs. Edwards did not have authority to consent to the search because the defendant still maintained a privacy interest in the house despite the fact that he had not lived there for two months *(see, United States v Matlock,* 415 US 164, 171; *People v Stadtmore,* 52 AD2d 853; *State v Zindros,* 189 Conn 228, 456 A2d 288, *cert denied* 465 US 1012).* We conclude that the police officers' reliance in good faith on the apparent authority of Mrs. Edwards to consent to the search and the attendant circumstances which reasonably indicated that she did have authority to consent made the search lawful *(People v Adams,* 53 NY2d 1, 9-10, *cert denied* 454 US 854; *People v Cardew,* 132 AD2d 721, 724, *lv denied* 70 NY2d 953; *People v Battee,* 94 AD2d 935).*

Moreover, in light of the overwhelming evidence against the

defendant any error in the introduction of the spent shell casing was harmless. The defendant was seen by two local youths and the son of a local video arcade owner in the immediate area of the killings between approximately 10:00 A.M. and 3:00 P.M. on April 15, 1984. Sometime between 4:00 P.M. and 5:00 P.M., one of the youths went to visit his girl-friend, who was one of the victims, at her home. He walked up to the front door and looked into the window. He saw the defendant leaning over one of the victims and heard a gun-shot, although he did not see a gun. This young man and the two others identified the defendant. After his arrest, the defendant confessed to killing the victims to a fellow prisoner at Rikers Island. These four people testified at the trial. In light of this evidence, the ballistics evidence tying the defen-dant to the murder weapon, while important, was not crucial. Therefore any error in its introduction into evidence was harmless beyond a reasonable doubt (see, People v Almestica, 42 NY2d 222, 226). Mangano, J. P., Bracken, Weinstein and Balletta, JJ., concur.