Barbara Rigie, Appellant, v Ernest S. Goldman et al., Respondents.

Second Department, June 26, 1989

APPEARANCES OF COUNSEL

*Giamo, Vreeburg, Previte, Farber & Rosen (Richard Graver* of counsel), for appellant.

*Siff, Rosen & Parker, P. C. (William G. Ballaine* and *Maria J. Litman* of counsel), for respondents.

OPINION OF THE COURT

THOMPSON, J. P.

In this action based, *inter alia,* on a lack of informed consent in the removal of an impacted wisdom tooth, we must determine whether evidence of the defendant Dr. Samuel H. Levin's routine practice of advising patients of the risks associated with that surgical procedure was admissible as circumstantial evidence that he acted in conformity with his routine practice on the date in question. We conclude that the disputed evidence adequately established a frequency of conduct sufficient to be considered habitual. It was, therefore, properly admitted by the trial court.

The pertinent dispute on this appeal centers upon a question of fact, namely, whether the defendant Dr. Samuel H. Levin advised the plaintiff that the removal of a lower impacted wisdom tooth carried with it a risk of nerve severance capable of producing a permanent condition known as paresthesia, i.e., numbness of the lip, chin or tongue.

On February 4, 1984, pursuant to the recommendation of her dentist, the plaintiff visited Dr. Levin, a specialist in oral and maxillofacial surgery, for treatment of a lump on the right lower part of her gum. Dr. Levin diagnosed the plaintiff's condition as pericoronitis of the lower right wisdom tooth. That condition is characterized by swelling, redness and localized infection of the tissue overlying the tooth. Dr. Levin also determined that rather than being in the normal vertical position, the affected tooth was in a horizontal position and was impacted into the bone with the top portion of the tooth tilted towards the front of the mouth and leaning against the adjacent tooth. On the basis of an X ray and his clinical examination, Dr. Levin determined that the plaintiff's impacted wisdom tooth should be removed. The tooth was extracted that same day. As a result of the surgical procedure, the plaintiff suffers from a permanent condition known as paresthesia which can only arise by the severing or injuring of a nerve within the oral cavity.

The plaintiff testified at trial that Dr. Levin advised her that the surgical procedure might cause her to experience some pain and numbness for a week or two. She claimed that she was not otherwise apprised of the dangers of the procedure and was told that extraction of the wisdom tooth was the only course of treatment for her condition. While acknowledging that Dr. Levin's dental assistant had given her a form to sign, the plaintiff did not read the form prior to signing it and had assumed that the form concerned the anesthesia necessary to the procedure. Upon being shown a consent form which was admitted into evidence at trial, the plaintiff conceded that the signature on the form looked like her own. However, she did not recognize the document.

Dr. Levin admitted that he had no independent recollection of specifically what he told the plaintiff regarding the risks associated with the removal of an impacted wisdom tooth. The court permitted Dr. Levin to testify, over objections from the plaintiff's counsel, as to his routine practice developed over 19 years of practice in the specialized area of oral and maxillofacial surgery and followed in every instance of the thousands of extractions of wisdom teeth he had performed in his career. Invariably, he asserted, he tells his patients prior to the removal of an impacted wisdom tooth of the risks and complications of the procedure, including the possibility of permanent numbness of the tongue, chin and lip. He also tells those patients that no alternative to extraction exists to alleviate the condition but that he could treat the condition with antibiotics or by cleaning the infected area. Lastly, he testified that he would then follow the course of action the patient requested. Although Dr. Levin could not recall the specifics of the conversation he had with the plaintiff prior to performing the extraction, he remembered that he had delivered a warning to her concerning the dangers attending oral surgery.

The trial court also permitted Dr. Levin's dental assistant for the prior eight years to testify as to Dr. Levin's consistent practice of informing patients of the usual risks associated with the extraction of an impacted wisdom tooth including the admonition that temporary or permanent numbness of the lip, tongue or chin may result. The dental assistant stated that in the hundreds of surgical procedures she had witnessed involving the extraction of impacted wisdom teeth, Dr. Levin, without exception, had issued a warning of the dangers associated with the surgical procedure prior to anesthesia being administered to the patient. Following Dr. Levin's disclosures to the

patient, the dental assistant's routine was to ask the patient if he had any further questions and, if no questions were forthcoming, she would present the patient with a consent form. The dental assistant would remain with the patient as he signed the consent form. She would then date the form and sign it as a witness. The consent form bearing the plaintiff's signature, which was admitted into evidence, was exhibited to the dental assistant who recognized the signature following the word "Witness" as her own.

In response to a special interrogatory posed to it, the jury found that the plaintiff failed to establish by a preponderance of the credible evidence Dr. Levin's failure to adequately disclose to her information that would enable her to evaluate intelligently the potential risks and benefits of the operation prior to having her wisdom tooth extracted. A judgment was, therefore, entered in favor of the defendants.

On this appeal, the plaintiff complains that the admission into evidence of Dr. Levin's habit or custom of routinely advising patients about to undergo surgery for removal of an impacted wisdom tooth of the potential risks attending such surgery constituted error. We disagree.

As a general rule, evidence of habitual behavior or custom is admissible as circumstantial proof that the habit was followed on the occasion in question (see, Richardson, Evidence § 185 [Prince 10th ed]). Traditionally, the admissibility of such evidence of habit was limited to situations involving the performance of routine business or professional tasks (see, Matter of Will of Kellum, 52 NY 517 [evidence of habit of drawing a will in accordance with statutory requirements]; People v Bombard, 5 AD2d 923, and People v Bean, 284 App Div 922 [evidence of habit of advising defendants of their right to counsel]; Peninsula Natl. Bank v Hill, 52 Misc 2d 903, affd 30 AD2d 643 [evidence of process server's habit in making substituted service]). There is also some suggestion in the decisional law that in a criminal case evidence of the defendant's "habitual" appearance (see, People v Medina, 130 AD2d 515; People v Gonzalez, 100 AD2d 852) or of the defendant's habit of carrying a particular weapon (see, People v Paschall, 91 AD2d 645) may be admissible under appropriate circumstances.

However, until the decision of the Court of Appeals in Halloran v Virginia Chems. (41 NY2d 386), the courts in this State had excluded evidence of habitual behavior in negli-

gence actions to show that a party was or was not careful on a specific occasion *(see, e.g., Zucker v Whitridge,* 205 NY 50, 58-66; *Witherel v Balling Constr.,* 99 AD2d 646; *Davis v Blum,* 70 AD2d 583). Habit evidence was forbidden in negligence cases for a variety of reasons: it raised too many collateral issues; it was too similar to character evidence that is not admissible in civil actions; and negligence involves a departure from normal behavior so that prior conduct is of little probative value on the question of the behavior at issue *(see,* Richardson, Evidence § 186 [Prince 10th ed]; 1 Wigmore, Evidence § 92 [3d ed]; *see generally,* Prince, Evidence, 29 Syracuse L Rev 553, 554 [1978]).

The *Halloran* case *(supra),* however, drastically modified the standard rule applicable to habit evidence in negligence cases and allowed evidence of repetitive conduct to be admitted in a personal injury action as a means of establishing one's conduct on a particular occasion. The key issue in that products liability action was whether a freon manufacturer was liable where a can of the refrigerant exploded, injuring the plaintiff, an automobile mechanic. The plaintiff's habit of overheating cans of freon while servicing automobile air conditioning units was permitted into evidence to demonstrate the plaintiff's contributory fault. The Court of Appeals held that where the proof demonstrates "a deliberate and repetitive practice" and the particular conduct involves a person "in complete control of the circumstances", evidence of such a routine practice could be admitted to allow an inference of negligence on a particular occasion *(Halloran v Virginia Chems., supra,* at 392). Prior to permitting the introduction of such evidence the Trial Judge must be satisfied that the party seeking to admit habit evidence "expects to prove a sufficient number of instances of the conduct in question" *(Halloran v Virginia Chems., supra,* at 392).

At least one commentator has opined that the Court of Appeals in *Halloran* did not intend to disturb the earlier rulings in negligence cases which prohibited introduction of evidence of repetitive conduct. Rather, the court intended to carve out a limited exception where the probative value of the habit evidence was substantial and clearly outweighed the danger of creating collateral issues or of confusing, misleading or prejudicing the jury *(see,* Prince, Evidence, 29 Syracuse L Rev 553, 555-556 [1978]; *see also,* Richardson, Evidence § 186 [Prince 10th ed, 1972-1985 Cum Supp]).

Support for this view of *Halloran (supra)* as a limited

exception may be found in the subsequent Court of Appeals decision in *Ferrer v Harris* (55 NY2d 285) which held inadmissible evidence that the four-year-old infant plaintiff's mother had instructed her repeatedly on safe procedures to be followed in crossing city streets. The infant plaintiff was injured when she ran from between parked cars into the street and was struck by the defendant's automobile. Apparently, the plaintiffs sought to introduce evidence of the instructions given to the infant to demonstrate the infant acted in accordance with those instructions on the occasion in question. The court held such evidence inadmissible because there was no proof the infant had acted on the mother's instructions. However, the decision seemed to leave open the question of whether the court would have departed from the traditional rule and allowed proof of the infant's own habit of carefully crossing the street.*

The true nature and essence of the cause of action sued upon at bar based upon a lack of informed consent is key to our analysis of whether the habit evidence admitted at trial was within the ambit of the *Halloran* limited exception to the general rule precluding habit evidence in negligence cases. An action to recover damages for lack of informed consent was traditionally viewed as constituting the common-law tort of assault and battery *(see, e.g., Schloendorff v Society of N. Y. Hosp.,* 211 NY 125; *Fogal v Genesee Hosp.,* 41 AD2d 468, 473; *Darrah v Kite,* 32 AD2d 208, 210-211). The modern view, however, is that except in nonexigent situations involving no consent at all *(see, Oates v New York Hosp.,* 131 AD2d 368; *Sangiuolo v Leventhal,* 132 Misc 2d 680, 683) the failure of a doctor to properly inform his patient of the risks of an

---

* We note a line of Federal cases where evidence of a professional's routine and regular practices was admitted in malpractice trials *(see, e.g., Meyer v United States,* 638 F2d 155 [practice of warning patients of the risks involved in the extraction of third molars]; *In re Swine Flu Immunization Prods. Liab. Litig.,* 533 F Supp 567 [routine of obtaining signed consent forms prior to administering the swine flu vaccine]). Admission of such evidence in Federal courts is governed by a specific statutory rule permitting evidence of habit to prove a person's conduct on a specified occasion (Fed Rules Evidence rule 406).

Similarly, in the decisions to be found in our sister State jurisdictions in which evidence of a physician's habit and custom was found properly admissible, a specific statutory provision governed such rulings *(see, e.g., Bloskas v Murray,* 646 P2d 907 [Colo] [habit of informing patient of risk associated with replacement of joints]; *Reaves v Mandell,* 209 NJ Super 465, 507 A2d 807 [habit of advising patients of risks of and alternatives to hysterectomy]).

operation is to be regarded as a species of malpractice based upon negligence *(see, e.g., Oates v New York Hosp., supra,* at 369; *Dries v Gregor,* 72 AD2d 231; *Murriello v Crapotta,* 51 AD2d 381). So viewed, an action based solely on lack of informed consent requires proof of a breach by a doctor of his professional duty to outline the risks inherent in the operative procedures as well as proof that the resulting injury was caused by the doctor's disputed conduct *(see,* Public Health Law § 2805-d [1], [3]). Moreover, dismissal of an action alleging lack of informed consent is statutorily mandated absent expert medical testimony to establish the inadequacy of the advisements provided the patient (CPLR 4401-a; *Gonzalez v Moscarella,* 142 AD2d 550, 551-552).

The choice of legal theory has important ramifications with respect to the evidentiary ruling at issue in this case. Because the conduct of the parties is measured by the standard negligence analysis, the habit evidence at issue must be reviewed within the context of the principles espoused in *Halloran (supra)* rather than within the traditional rule applicable to routine business or professional tasks. Considering the trial record in that context, we are of the opinion that the testimony to which the plaintiff objects provided an adequate number of prior instances of specific, repetitive conduct by Dr. Levin when confronted with a patient presenting a similar condition to rise to the level of habit. Moreover, Dr. Levin was in complete control of the circumstances in which the operative procedure was performed. Thus, while creating no presumption that the practice was followed in the particular instance at issue, the testimony of Dr. Levin as to his routine practice, corroborated by his dental assistant, was properly admissible to support an inference by the jury that the practice was followed on the particular occasion in question *(Halloran v Virginia Chems., supra,* at 391-392). The weight and value to be accorded such testimony as well as the resolution of the plaintiff's contradictory testimony that Dr. Levin did not warn her of the dangers associated with the surgical procedure were for determination by the jury.

While we should exercise caution in permitting the admission of habit evidence to prevent such evidence from being used to establish a party's propensity to act in conformity with his general character, where, as here, the evidence of habit exhibits a uniformity of response and a sufficient number of instances of the repetitive conduct, it is admissible. The

inference drawn by the jury that the routine practice was followed with respect to the plaintiff was reasonable.

RUBIN, SPATT and BALLETTA, JJ., concur.

Ordered that the judgment is affirmed, with costs.