■ MARGARITA RIVERA, Appellant, v KATTE ANILESH, D.D.S., et al., Defendants, and INDU ANILESH, D.D.S., Respondent. [820 NYS2d 223]—

---

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered November 3, 2004, which, in an action for dental malpractice, insofar as appealed from as limited by the briefs, granted defendant-respondent Dr. Anilesh's motion for summary judgment dismissing the first cause of action for dental malpractice as against her, reversed, on the law, without costs, the motion denied and the first cause of action reinstated as against Dr. Anilesh.

On Thursday, May 4, 2000, plaintiff Rivera sought dental treatment for a broken filling. Dr. Anilesh took x rays of the subject tooth and determined that it should be removed. According to plaintiff, Dr. Anilesh gave her one anesthesia injection in the back of her mouth, and then, after plaintiff felt no effect, a second injection in a different area, which plaintiff felt was in the wrong place because the sensation was strange and horrible, almost like an electric shock. After the extraction, plaintiff was not prescribed any antibiotics or pain medication. The next day plaintiff informed Dr. Anilesh's office that she was having trouble opening her mouth. Plaintiff soon developed a fever, her mouth hurt, she felt dizzy from not eating, she had a headache and the swelling on her face worsened. The following Monday, Dr. Anilesh prescribed plaintiff an antibiotic; when she returned three days later with continued complaints, plaintiff was referred to an oral surgeon. The pain and swelling persisted and plaintiff still could not open her mouth. She was then diagnosed with an infection and was hospitalized for 21 days.

In her deposition, Dr. Anilesh recalled that on May 4, 2000, she examined plaintiff, took x rays, and determined that although no infection was present, the tooth had a fractured filling, considerable bone loss and mobility, and thus needed to be extracted. Although Dr. Anilesh testified that it is her custom and practice to discuss the risk of a tooth extraction with a patient before performing an extraction, she did not recall whether she had such a discussion with plaintiff. She then testified that she generally tells her patients of the risks and complications during an extraction, including bleeding, postoperative swelling and pain, infection, and a fracture or damage to an adjacent tooth, and where a maxillary tooth is being extracted, a fractured jaw and/or sinus exposure.

Submitted in support of Dr. Anilesh's motion for summary judgment dismissing the complaint was an affirmation of board certified oral and maxillofacial surgeon Dr. Salvatore Ruggiero, who after reviewing, inter alia, the party deposition transcripts, opined that Dr. Anilesh's sterilization and injection technique was within the standard of care. Plaintiff opposed the motion, submitting an affirmation from Dr. Richard Lewin-Epstein, a dentist licensed to practice in New York State, who opined that Dr. Anilesh deviated from the standard of care in connection with the administration of a second injection in an inappropriate and/or improper area of the mouth, which caused bacteria to be introduced in an area which facilitated their multiplication and that the deviation was a cause of plaintiff's massive infection.

The motion court, in dismissing the complaint against Dr. Anilesh, erroneously relied upon her testimony regarding her custom and practice in the extraction of teeth and the administration of anesthesia, and upon the testimony of her expert whose opinion was based solely upon her testimony. " 'The general rule in New York is that evidence of a person's habitual conduct under similar circumstances in respect to using care is inadmissible for the purpose of raising an inference that [s]he exercised the same amount of caution on the occasion when the injury in question was sustained. Such evidence is excluded for the reason that it raises too many collateral issues and, also, because it borders too closely on character evidence, which is not admissible in civil cases' " (*Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203, 206 [1989], quoting Richardson, Evidence § 186, at 155 [Prince 10th ed]). Here, Dr. Anilesh's testimony regarding her routine practice of administering anesthesia injections does not take into consideration the unique circumstances surrounding each individual patient, including plaintiff, and therefore cannot be compared with the "repetitive 'hornbook' warnings conveyed by a physician to prospective surgical patients" of the risks involved in a particular type of surgery (*Gushlaw v Roll*, 290 AD2d 667, 670 [2002], citing *Rigie v Goldman*, 148 AD2d 23 [1989]; *see also Acevedo v New York City Health & Hosps. Corp.*, 251 AD2d 21 [1998], *lv denied* 92 NY2d 808 [1998]). Thus, absent other evidence that defendant did not depart from the standard of care or that any such departure was not a substantial factor in causing plaintiff's injuries, summary judgment should have been denied as to the first cause of action.

Neither plaintiff's brief nor her opposition papers in the motion court discuss her second cause of action based on lack of

informed consent; accordingly, we deem her appeal from the dismissal of that cause of action abandoned (*Dias v Stahl*, 256 AD2d 235, 237 [1998]). Concur—Nardelli, Sweeny and Malone, JJ.

Tom, J.P., and Friedman, J., concur in a separate memorandum by Friedman, J., as follows: I agree that we should reverse the grant of summary judgment to defendant-respondent, but, as explained below, I reach this conclusion for reasons different from those given by the majority.

I begin by briefly recounting the underlying facts. Defendant-respondent Indu Anilesh, D.D.S. (Dr. Anilesh) had been plaintiff's dentist since 1991; at the inception of the relationship, plaintiff, an insulin-dependent diabetic, already had lost 12 teeth. On May 4, 2000, plaintiff, then 45 years old, presented to Dr. Anilesh with complaints of a fractured restoration and mobility at tooth no. 20, and asked that the tooth be extracted. Upon examination and x rays, Dr. Anilesh confirmed that the tooth was unsalvageable, and agreed to perform the extraction the same day. Plaintiff signed a consent to the extraction after Dr. Anilesh, in conformity with her usual practice, discussed the potential risks of the treatment with her. Accordingly, Dr. Anilesh anesthetized the relevant area by administering a mandibular block injection, and then extracted the tooth. As more fully discussed below, plaintiff contends that Dr. Anilesh departed from accepted standards of dental practice in her administration of the preextraction mandibular block injection on May 4, 2000.

On May 8, 2000, four days after the extraction, plaintiff returned to Dr. Anilesh's office with complaints of pain, swelling of the left jaw, and difficulty in opening her mouth. After an x ray failed to reveal any infection, Dr. Anilesh prescribed the antibiotic Erythromycin as a precautionary measure, and directed plaintiff to take Tylenol and Perioguard mouthwash. On May 11, while still taking the antibiotic, plaintiff again returned to Dr. Anilesh with complaints of pain on the left side of her face. At that point, Dr. Anilesh referred plaintiff to an oral surgeon for evaluation. The May 11 visit was the last time Dr. Anilesh treated plaintiff.

On May 12, May 17 and June 2, plaintiff was seen by oral surgeons, who treated her complaints of pain, swelling and difficulty in opening the mouth with two additional mandibular block injections, orally ingested medicine, and recommendations to restrict her diet to soft food. Notably, the physicians who examined plaintiff on May 12, May 17 and June 2 did not find any sign of infection on those dates; they believed that plaintiff

was suffering from a dysfunction of the temporomandibular joint (TMJ). On June 6, plaintiff again saw an oral surgeon, complaining that her symptoms were getting worse. At that point—more than a month after Dr. Anilesh's alleged malpractice on May 4—plaintiff was referred to Bronx-Lebanon Hospital for treatment of an infection within the left side of her jaw. Plaintiff was in the hospital for treatment of this infection for approximately two weeks.

As previously indicated, plaintiff contends that Dr. Anilesh departed from accepted dental practice in her administration of the mandibular block injection prior to extracting the tooth on May 4, 2000. In support of her motion for summary judgment, Dr. Anilesh submitted, among other evidence, her deposition testimony describing, in considerable detail, the technique she customarily uses in giving mandibular block injections. Dr. Anilesh stated that, in the event the desired numbing effect is not achieved the first time she gives such an injection, she will give a second injection, in the same place as the first. Dr. Anilesh did not, however, have a specific recollection of how she administered the injection to plaintiff on May 4, 2000, nor did she recall whether she gave one or two injections on that occasion. According to the affirmation of Dr. Anilesh's dental expert (Dr. Salvatore L. Ruggiero, a board-certified oral surgeon), the injection technique Dr. Anilesh testified that she customarily uses is fully in accord with accepted dental practice. This point appears to be undisputed.

In opposition to the motion, plaintiff submitted the affirmation of another dentist, Dr. Richard Lewin-Epstein, who opined, based on plaintiff's testimony, that Dr. Anilesh had departed from accepted dental practice in giving a mandibular block injection on May 4, 2000. Plaintiff testified that Dr. Anilesh gave her two injections prior to extracting the tooth, and that plaintiff experienced sharp pain upon receiving the second injection, which she complained about to Dr. Anilesh. Dr. Lewin-Epstein stated that, when two mandibular block injections are given, the second injection should be given in the same location as the first, and that, when this is done, the second injection will not cause the patient any pain. Based on plaintiff's testimony that the second injection caused her a great deal of pain, Dr. Lewin-Epstein opined that Dr. Anilesh failed to give the second injection in the same place as the first, and that this constituted a departure from accepted dental practice. Dr. Lewin-Epstein further opined that an injection given at the wrong place is "much more likely to result in a subsequent infection than an injection

in the proper location."

In the majority's view, the summary judgment motion should have been denied, apparently without regard to the sufficiency of plaintiff's opposition, on the ground that Dr. Anilesh's moving papers failed to set forth a prima facie case for her entitlement to judgment. According to the majority, Dr. Anilesh's testimony about her customary technique in giving mandibular block injections is inadmissible evidence of "habitual conduct under similar circumstances" (*Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203, 206 [1989], quoting Richardson, Evidence § 186, at 155 [Prince 10th ed]). In *Glusaskas*, a surgeon sued for medical malpractice in performing surgery on a patient who died on the operating table was not permitted to place into evidence a videotape of himself performing surgery on another patient. Similarly, in *Gushlaw v Roll* (290 AD2d 667, 670 [2002]), another medical malpractice case, it was held that testimony by the defendant oral surgeon and his assistant "as to their general practice in the manner in which they handle patients during surgery" was properly excluded (*see also Acevedo v New York City Health & Hosps. Corp.*, 251 AD2d 21, 22 [1998], *lv denied* 92 NY2d 808 [1998] [trial court did not err "in excluding proffered habit evidence to prove the absence of malpractice by one of the defendant physicians"]). While I recognize the validity, within its appropriate scope, of the principle illustrated by the foregoing decisions, I do not believe that principle applies here.

The Court of Appeals has recognized that "the statement that evidence of habit or regular usage is never admissible to establish negligence [or, by parity of reasoning, due care] is too broad" (*Halloran v Virginia Chems.*, 41 NY2d 386, 392 [1977]). Thus, the Court held in *Halloran* that, "where the issue involves proof of a deliberate and repetitive practice, a party should be able, by introducing evidence of such habit or regular usage, to allow the inference of its persistence . . . on a particular occasion" (*id.*). Consistent with this principle, the Court of Appeals ruled in *Halloran* (a products liability case) that the defendant was entitled to offer evidence that, prior to his accident, the plaintiff had followed a habitual practice of heating cans of the defendant's product in an unsafe manner (*id.* at 389). In a medical context, the *Halloran* holding has been applied to permit the admission of an oral surgeon's testimony concerning his routine practice in warning patients of the risks involved in the removal

of an impacted wisdom tooth (*Rigie v Goldman*, 148 AD2d 23, 24 [1989]).[1]

In my view, under *Halloran* and *Rigie*, Dr. Anilesh's testimony about her routine technique in administering mandibular block injections is admissible evidence of how she injected plaintiff on May 4, 2000, and, therefore, Dr. Anilesh's moving papers carried her burden of establishing a prima facie case for judgment in her favor. It seems to me that, for a dentist, giving such an injection is "a deliberate and repetitive practice" that is "[un]likely to vary with the attendant circumstances" (*Halloran*, 41 NY2d at 392). Moreover, because the dentist performing this task is "in complete control of the circumstances," proof of the dentist's routine injection technique is "highly probative" of how he or she administered an injection on a particular occasion (*id.*). Plaintiff does not direct our attention to any evidence indicating that the technique for giving a mandibular block injection varies with a patient's particular circumstances. To the contrary, plaintiff's expert, Dr. Lewin-Epstein, attests that this type of injection is always properly given in the same location. Thus, the instant case is far removed from *Glusaskas* and *Gushlaw*, in which the underlying issue was whether a physician properly performed surgery. Plainly, surgery—a complex task calling for continuous exercise of professional judgment, in which proper technique obviously varies with circumstance—cannot remotely be characterized as "repetitive." By contrast, the word "repetitive" almost perfectly describes the administration of a routine injection for a medical or dental professional.[2]

I would add that the majority's position against considering Dr. Anilesh's testimony concerning her injection technique may lead to harsh results (in future cases if not in this one) that should be avoided, if at all possible. Since Dr. Anilesh understandably does not have any independent recollection of how

1.  I agree with the majority that plaintiff has abandoned her informed consent cause of action. On this record, however, *Rigie* would require the dismissal of that claim even if plaintiff had not abandoned it. This is because Dr. Anilesh testified that it was her customary practice to make appropriate disclosure of the risks of treatment to patients, and nothing in the record indicates that she did not make such disclosure to plaintiff on May 4, 2000.

2.  Dr. Anilesh also gave deposition testimony that, together with her expert's affirmation, establishes that her regular practice in sterilizing instruments is in accord with applicable standards of dental practice. It seems clear that, under *Halloran* and *Rigie*, Dr. Anilesh's testimony about her usual sterilization technique will be admissible at trial. Since plaintiff does not point to any evidence tending to show that the sterilization technique Dr. Anilesh used on May 4, 2000, was not in accordance with her regular practice, any issue with regard to sterilization technique has been eliminated from the case.

she injected plaintiff on May 4, 2000, and, equally understandably, did not make contemporaneous notes of her injection technique on that occasion, the majority's position carries with it the danger of coming close to ruling that plaintiff, once she presents a prima facie case at trial, may be entitled to prevail on the malpractice issue as a matter of law. Stated otherwise, and to reiterate the point, the majority, by precluding Dr. Anilesh's testimony about her usual technique in administering anesthetic, strips her of a key defense. Even though Dr. Anilesh in this case has another avenue by which to rebut plaintiff's case (as discussed below), the implication of the majority's position for future cases raising similar issues concerning the performance of a routine medical or dental procedure is that the defendant professional has no effective means for defending his or her conduct absent a written record of the exact technique used in carrying out each routine step in treating the patient. It would be a distracting burden to require health care professionals to maintain a record of how each anesthetic injection within a course of treatment was administered. Nor is there any indication from any expert that maintaining such a record is a requirement of good dental practice.

What emerges is that Dr. Anilesh, by testifying to her technique in administering anesthesia (including her practice of giving a second injection in the same place as the first), has succeeded in shifting to plaintiff the burden of coming forward with evidence sufficient to demonstrate the existence of triable issues of fact as to whether Dr. Anilesh committed malpractice. Contrary to Dr. Anilesh's arguments, plaintiff appears to have sustained this burden. Again, plaintiff testified that Dr. Anilesh injected her twice, with the second injection causing intense pain. Based on this testimony, plaintiff's expert, Dr. Lewin-Epstein, opined that the second injection was given in an incorrect location, and that this departure from the standards of dental practice made an ensuing infection "much more likely" than it would have been had the injection been placed correctly. While this suffices to make out a prima facie case against Dr. Anilesh, Dr. Anilesh should be permitted to counter this evidence with her testimony about her customary injection technique, as discussed above. In addition, plaintiff's testimony that the second injection caused her pain—which is crucial to her expert's theory that the second injection was improperly administered—may be countered by Dr. Anilesh's testimony that it is her practice to make a record of any complaints of pain a patient makes during treatment. Since Dr. Anilesh's treatment records do not reflect any complaint by plaintiff that she experienced pain as a result of an injection on May 4, 2000,

a credibility issue will be presented regarding plaintiff's testimony that the second injection was painful.

For the foregoing reasons, rather than those relied on by the majority, I concur in the reversal of the grant of summary judgment to Dr. Anilesh, and in the reinstatement of plaintiff's first cause of action as against her.

