MEMORANDUM-DECISION AND ORDER
 

 HURD, United States Magistrate Judge.
 

 Presently before the court are numerous motions filed by both parties, as outlined below. Oral arguments by the parties were heard by the court on June 13,1996, in Utica, New York.
 

 BACKGROUND
 

 The plaintiff, Frederick Pesce, filed this diversity action on behalf of his wife Joan Pesce alleging that she was very seriously injured while driving her 1990 Chevrolet Berretta manufactured by defendant General Motors Corporation (“GM”). The claims include defective design and manufacture, breach of implied and express warranties, negligence, and strict products liability, seeking compensatory and punitive damages. Plaintiff also alleges a consequent loss of companionship and the services of his wife. The defendant denies the material allegations in the complaint and alleges various affirmative defenses.
 

 FACTS
 

 On February 4,1992, Joan Pesce was driving her car within the Town of Hartwick, New York, west on County Route 11 which was partially snow covered. Mrs. Pesce approached the vehicle traveling in front of her, which was traveling at a slower rate of speed, and applied her brakes. She then skidded into the oncoming lane of traffic, and her vehicle was struck by a 1977 Oldsmobile being driven by a Gary Harrington.
 

 Mrs. Pesce suffered severe permanent injuries, including brain damage. Many of the specific facts as to the causes of her injuries are hotly contested by the parties. The issue of how Mrs. Pesce sustained her injuries has partially to do with the manner in which the vehicles interacted during the crash sequence, which is also contested by the parties and the experts they have retained. Mrs. Pesce was unquestionably wearing her seat belt at the time of the incident. Plaintiff alleges that the seat belt in the Pesce vehicle manufactured by defendant GM failed to protect his wife. Several weeks after her injury
 
 *162
 
 and during her hospitalization, Mr. Pesce received in the mail a recall notice from GM pertaining to the seat belts in Mrs. Pesce’s Chevrolet. GM had discovered a manufacturing defect in vehicles like the 1990 Chevrolet Beretta, which potentially would render the front seat belts inoperative.
 

 At some point after the collision, but before the beginning of litigation, the driver’s shoulder belt “D” ring and shoulder belt retractor were “chiseled” out of the vehicle and are now missing and unaccounted for. GM contends that without the missing items to examine, there is no direct evidence of the failure of the seat belt to protect Mrs. Pesce.
 

 DISCUSSION
 

 A.
 
 Defendant’s Motion for Summary Judgment
 

 Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56;
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986);
 
 Lang v. Retirement Living Pub. Co.,
 
 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56;
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);
 
 Thompson v. Gjivoje,
 
 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986);
 
 Project Release v. Prevost,
 
 722 F.2d 960, 968 (2d Cir.1983).
 

 When the moving party has met the burden, the nonmoving party “must do more than simply show that there is some metaphysical doubt as to the material facts.”
 
 Matsushita Elec. Indus. Co.,
 
 475 U.S. at 586, 106 S.Ct. at 1355. At that point, the non-moving party “must set forth specific facts showing that there is a genuine issue for trial.” Fed.R.Civ.P. 56;
 
 Liberty Lobby, Inc.,
 
 477 U.S. at 250, 106 S.Ct. at 2511;
 
 Matsushita Elec. Indus. Co.,
 
 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.
 
 Liberty Lobby, Inc.,
 
 477 U.S. at 248-49, 106 S.Ct. at 2510-11;
 
 Matsushita Elec. Indus. Co.,
 
 475 U.S. at 587, 106 S.Ct. at 1356.
 

 In a diversity action, the court must apply the substantive law of New York.
 
 Caiazzo v. Volkswagenwerk AG.,
 
 647 F.2d 241, 243 (2d Cir.1981). The New York Court of Appeals has extended liability to vehicle manufacturers in matters often referred to as “second collision” cases.
 
 Tiner v. General Motors Corp.,
 
 909 F.Supp. 112, 116 (N.D.N.Y.1995). These cases involve defects which the plaintiff does not claim caused the accident itself, but rather enhanced or aggravated plaintiff’s injuries.
 
 Bolm v. Triumph Corp.,
 
 33 N.Y.2d 151, 159, 350 N.Y.S.2d 644, 305 N.E.2d 769.(1973). Such cases involve incidents where a driver and possibly a passenger of a vehicle are involved in a collision with another vehicle or object during which time, as a result of the initial collision, the occupants of the vehicle move about and hit interior portions of the cabin or are ejected from the vehicle and injured.
 
 Caiazzo,
 
 647 F.2d at 243 n. 2.
 

 “In a products liability case it is now established that, if plaintiff has proven that the product has not performed as intended and excluded all causes of the accident not attributable to defendant, the fact finder may, even if the particular defect has not been proven, infer that the accident could only have occurred due to some defect in the product----”
 
 Halloran v. Virginia Chemicals Inc.,
 
 41 N.Y.2d 386, 388, 393 N.Y.S.2d 341, 361 N.E.2d 991 (1977);
 
 see also Codling v. Paglia,
 
 32 N.Y.2d 330, 337-338, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973) (jury could correctly find that defendant was liable without direct proof of a malfunction, through inference);
 
 Fogal v. Genesee Hosp.,
 
 41 A.D.2d 468, 477-478, 344 N.Y.S.2d 552 (4th Dep’t 1973) (while evidence in case was circumstantial, it was sufficient to affix liability to manufacturer).
 

 
 *163
 
 General Motors moves for summary judgment, and doing so, claims that having come forward, it meets the burden of proof necessary to establish that there is no genuine issue of material fact. GM argues that it is incumbent upon the plaintiff to come forward because “then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists.”
 
 Weg v. Macchiarola,
 
 995 F.2d 15, 18 (2d Cir.1993). Defendant contends that because the shoulder belt retractor and “D” ring are missing, and because the retractor is the allegedly defective item, that there can be no direct proof of the failure of the seat belt to protect plaintiff from enhanced injury during the collision.
 

 Under such circumstances, GM argues that direct proof of the defect is not possible, and plaintiffs must circumstantially establish that the evidence excludes all explanation for the occurrence other than that the seat belt was defective and significantly enhanced Mrs. Pesce’s injuries.
 

 General Motors argues that it has, through the examination of evidence by several experts, established that the cause of Joan Pesce’s injuries was in fact, not the failure of the seat belt retractor to lock, but rather the manner in which the Pesce vehicle and the other vehicle collided. An expert retained by defendant, Dr. Murray MacKay (“MacKay”), examined the injury pattern of the plaintiff and determined that in his expert opinion, the evidence appeared to be that the seat belt did lock, and therefore, there was no malfunction of the allegedly defective retractor. MacKay based his opinion upon several interpretations of evidence. First, MacKay opined that the right lower rib fractures of Joan Pesce are conclusive of the seat-belt locking. This opinion was buttressed with the fact that the lap portion of the seat belt, containing an “energy management loop,” or webbing stitching designed to tear under direct pressure, was not tom. MacKay claimed that only direct pressure would tear the lap belt stitching. Because the direct pressure was allegedly absorbed by the shoulder belt, it was to be expected that the lap belt stitching would not be torn. Further, MacKay opined that the intrusion of the other vehicle into Mrs. Pesce’s car, after impact, was twenty-seven inches. MacKay claimed this intrusion, which pushed the passenger-side door inwards twenty-seven inches, was what Joan Pesce hit her head upon, and claimed that there is a “witness” mark on the door from where she hit.
 

 Another expert employed by defendant GM, Ms. Pamela Oviatt, conducted an engineering test called a “sled” test, to explain how under GM’s theory Mrs. Pesce moved not forward, but to the side, to hit her head on the intruding door. The sled test consisted of a partially cut-away 1990 Chevrolet Berretta with a seat-belted “dummy” of the same size and weight as Mrs. Pesce. In a simulated accident, the cut-away vehicle with the “dummy” in place, was struck by crash-like forces from arguably the same angle as Mrs. Pesce’s vehicle was stmck. The defendant claims that the sled test conclusively showed that when a 1990 Berretta is hit from the same angle as that from which Mrs. Pesce’s car was struck, the seat-belted driver moves laterally to the right, slipping out from under the shoulder belt and striking her head upon the passenger-side door. Thus, GM argues, it would not matter whether the seat belt was operative or not, as in either scenario, according to its experts, the seat belt would be ineffective at protecting an occupant in such a collision.
 

 It is the position of GM that it is not only the burden of plaintiff to come forward and establish existence of issues of fact, but also his burden of excluding the possibility of other causes of the injury to Mrs. Pesce, as suggested by defendant.
 

 Plaintiffs experts, Mr. John Mareosky (“Mareosky”) and Dr. Ronald Huston (“Huston”), countered every interpretation of evidence by the defendant’s experts. Plaintiffs experts stated in numerous affidavits that it is their expert opinions that rather than the ribs breaking from the locking of the shoulder belt, Mrs. Pesee’s ribs were broken because the shoulder belt failed to lock, and because of the failure, she struck the center console of her vehicle. Plaintiffs experts found that had the shoulder belt actually locked, there would have been “load” marks, or permanent stretching of the webbing of
 
 *164
 
 the shoulder belt from the weight put upon the locked belt in a rapid deceleration such as from a vehicular collision. No such “load” marks were found on the Pesee seat belt webbing.
 

 The court notes that defendant failed to address the direct evidence from witnesses on the scene, three of whom in deposition testified that when they found Mrs. Pesee after the accident, she was lying in a position with the shoulder belt remaining upon her shoulder “spooled out.” Based upon the post-accident descriptions of Mrs. Pesee wearing her “spooled out” shoulder belt, her injury pattern, and flesh and blood found in the vehicle, plaintiffs experts stated that they have concluded that the shoulder belt retractor failed to lock, independent of knowledge about a recall. Both experts noted that the defective condition they have determined to have existed with Mrs. Pesce’s shoulder belt appears to be identical to the defective condition described in the recall letter that was sent to the Pesee residence to notify them of the recall.
 

 Plaintiffs experts stated that Mrs. Pesce’s injury pattern appeared not from contact with the second vehicle and a passenger door intrusion, but from forward movement which caused Mrs. Pesee to strike her head around the front dashboard and radio area. An emergency medieal technician (EMT), Mr. Christian Reller, observed blood and flesh on the vehicle’s radio located in the dashboard. The experts stated that this is extremely strong evidence that Mrs. Pesee moved forward, striking her head upon the dashboard/radio area, rather than as defendant’s experts assert. Further, Mareosky, plaintiffs expert accident reconstructionist, denied the existence of a “witness” mark that defendant’s experts claim was left when Mrs. Pesee purportedly struck the intruding passenger door.
 

 Unlike the defendant’s experts, Huston contended that the intact stitching on the lap portion of Mrs. Pesce’s seat belt is consistent with the shoulder belt’s failure to lock. Huston opined that in a collision of the magnitude of Mrs. Pesce’s, the majority of the force from her body would be directed in a manner which would have caused the lap belt stitching to tear if the shoulder belt had in fact locked.
 

 Plaintiff has come forward and not only met his burden of demonstrating to the court that several issues of fact exist, but also offers evidence which refutes the test which defendant claims illustrates a cause of Mrs. Pesce’s injury not attributable to itself. Plaintiffs experts stated that GM’s “sled” test is inaccurate and does not fairly replicate the conditions that were present at the time of the actual collision. Plaintiffs experts contend that because the position of the driver’s seat and the driving position of the “dummy” were different, and because the defendant’s “sled” test ended with the impact of the two vehicles without simulating the spinning of the vehicles after collision, the lateral movement of Mrs. Pesee that GM argues occurred in the collision is incorrect.
 

 The court finds that in viewing the submissions in opposition to the motion most favorably, the plaintiff has met his burden of coming forward to establish existence of material issues of fact. He has both set forth a
 
 prima facie
 
 case and excluded causes of Mrs. Pesee’s injuries not attributable to G.M. Summary judgment is therefore inappropriate.
 

 B.
 
 Defendant’s Motion for Preclusion of Evidence
 

 Defendant has moved under Federal Rule of Civil Procedure 37(d) to preclude evidence or testimony that GM removed or destroyed any component of the Pesee vehicle, evidence or testimony regarding performance of the allegedly defective shoulder belt retractor, and evidence or testimony of the recall of the Pesee vehicle.
 

 1.
 
 Preclusion of evidence of GM tampering
 

 Defendant’s motion to preclude evidence of GM’s possible tampering or removal of the missing shoulder belt retractor and “D” ring is uneontested by plaintiff. Therefore, GM’s Rule 37(d) preclusion motion is granted insofar as it pertains to any evidence or testimony regarding GM’s involvement in the disappearance of the retractor and the “D” ring.
 

 
 *165
 
 2.
 
 Preclusion of evidence pertaining to defect of missing seat belt assemblg
 

 The defendant argues that the plaintiffs failure to preserve the shoulder belt retractor and “D” ring constitutes spoliation, and that the court should therefore preclude evidence pertaining to these items. Because plaintiff alleges that the seat belt was defective and the actual allegedly defective item is missing, an order precluding any testimony or evidence of the retractor being defective would necessarily preclude plaintiff from being able to present a
 
 prima facie
 
 case. Thus, the order to preclude evidence pertaining to the defectiveness of the retractor would act in effect as a dismissal.
 

 ‘“Destruction of potentially relevant evidence obviously occurs along a continuum of fault — ranging from innocence through the degrees of negligence to intentionality. The resulting penalties vary correspondingly.’”
 
 Beil v. Lakewood Eng’g and Mfg. Co.,
 
 15 F.3d 546, 552-553 (6th Cir.1994) (quoting
 
 Welsh v. United States,
 
 844 F.2d 1239, 1246 (6th Cir.1988));
 
 see also Alexander v. National Farmers Org.,
 
 687 F.2d 1173, 1205-06 (8th Cir.1982) (severe sanction of dismissal would have been proper given outrageous destruction of documents, but not abuse of discretion to fail to do so), cert.
 
 denied,
 
 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983);
 
 In re Grace Line Inc.,
 
 517 F.2d 404, 409 (2d Cir.1975) (no negative inference may be drawn from failure to produce evidence absent showing of control at the time of disappearance or trial). “Some courts assign no adverse evidentiary consequences to destruction of evidence that is unintentional or satisfactorily explained.”
 
 Beil,
 
 15 F.3d at 552-53 (citing
 
 INA Aviation Corp. v. United States,
 
 468 F.Supp. 695, 700 (E.D.N.Y.),
 
 affd mem.,
 
 610 F.2d 806 (2d Cir.1979));
 
 see also In re Grace Line Inc.,
 
 517 F.2d at 409 (cannot draw negative inference where there is no proof of how evidence disappeared).
 

 In this case, a review of the submissions demonstrates that plaintiff’s alleged failure to preserve the seat belt components must be characterized as innocent. It would certainly not justify the drastic sanction of preclusion which would be tantamount to dismissal of the action. Moreover, a negative inference cannot be drawn from plaintiff’s failure to produce the missing seat belt components, due to the lack of any showing of how the components disappeared.
 
 See In re Grace Line Inc.,
 
 517 F.2d at 409.
 

 3.
 
 Preclusion of evidence pertaining to the recall of the Pesce vehicle
 

 GM contends that plaintiff has no independent proof that the shoulder belt re-tractor in the Pesce vehicle was defective. Defendant argues that the only basis for plaintiff’s experts’ opinions is the recall letter which describes the condition that plaintiff’s experts state existed.
 

 Before a recall letter can be admitted into evidence, the plaintiff must lay a proper foundation, independent of the recall itself, establishing that a defect existed in the vehicle.
 
 Calhoun v. Honda Motor Co.,
 
 738 F.2d 126, 133 (6th Cir.1984);
 
 Farner v. Paccar Inc.,
 
 562 F.2d 518, 525-526 (8th Cir.1977).
 

 Plaintiff has independently established that the seat belt was defective. As noted above, many witnesses testified by deposition that Mrs. Pesce was wearing her seat belt, that the shoulder belt was “spooled out,” that Mrs. Pesce was lying forward when she was found, and that blood and flesh appeared on the dashboard. Both of the plaintiff’s experts maintain that short of shoulder belt retractor failure, Mrs. Pesce would not have been found in the position she was in, or with the injuries that she sustained.
 

 Interestingly, the defendant, in moving to preclude evidence of the recall, failed to address the information and descriptions given by these witnesses, and did not attempt to explain why it would not be possible for this information to be sufficient independent grounds for the plaintiffs experts’ opinions.
 

 The plaintiff has proffered evidence of the defective seat belt retractor independent of the recall letter. The defendant’s motion to preclude admission of the recall letter is denied, without prejudice to renew should plaintiff fail to lay a proper foundation at trial.
 

 
 *166
 
 C.
 
 Plaintiffs’ Cross Motion to Amend Punitive Damages Clause
 

 Plaintiff seeks to amend the punitive damages clause of the complaint against defendant from $10 million to $30 million.
 

 Federal Rule of Civil Procedure 15(a) states that once a pleading has been served upon the court and the opposing party, the party may only amend its pleading “by leave of the Court or by written consent of the adverse party.”
 
 Id.
 
 When written consent of the adverse party is not secured, and leave of the Court is sought, “[it] shall be freely given when justice so requires.”
 
 Id.
 
 Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and resulting prejudice to the opposing party.
 
 Foman v. Davis,
 
 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962);
 
 State Teachers Retirement Bd. v. Fluor Corp.,
 
 654 F.2d 843, 856 (2d Cir.1981). Absent such a showing, leave to amend should be granted in the court’s discretion.
 
 Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,
 
 786 F.2d 101, 103 (2d Cir. 1986). Leave to amend was proper where “[t]he amended claim was obviously one of the objects of discovery and related closely to the original claim____”
 
 State Teachers Retirement Bd.,
 
 654 F.2d at 856.
 

 In the cross motion, plaintiff claims he has discovered new information about defendant’s conduct which would entitle him to a higher punitive damage award. Plaintiff claims that the deposition of Mr. Kevin O’Neil (“O’Neil”), an employee of GM quality assurance division, has established that defendant not only knew about the defective shoulder belt retractors for at least one year prior to the recall being instituted, but in addition, even after the recall had begun, the Pesces received tardy notice, about three weeks after Mrs. Pesce had her near fatal collision.
 
 [1]
 

 None of the factors discussed in
 
 Foman
 
 are present. First, there has been no undue delay in plaintiffs motion for this amendment. The deposition of O’Neil took place during the week of January 8,1996, after the original and amended complaints had been filed and served. Stipulation to the amendment was sought, and was denied by the defendant. Second, there have not been repeated failures to cure deficiencies in this case pertaining to the punitive damages clause. Third, there is no latent futility of the amendment proposed. It is within the realm of possibility that a jury could find that GM was either wanton and reckless, or willful in withholding notice to consumers about defective safety systems in their vehicles for at least one year, and that a jury might desire to punish and/or deter such conduct through an award of punitive damages in excess of the amount originally sought by plaintiff. Fourth, it does not appear that plaintiff has sought the amendment due to bad faith, nor has the defendant at any time stated that plaintiff was acting in bad faith.
 

 Finally, the court finds that the defendant would not be unduly prejudiced by the amendment. Purely monetary increase of exemplary, or punitive damages, is not in itself considered prejudicial to the nonmoving party.
 
 Loomis v. Civetta Corinno Constr. Corp.,
 
 54 N.Y.2d 18, 20, 444 N.Y.S.2d 571, 429 N.E.2d 90 (1981);
 
 Zieziula v. Loblaws, Inc.,
 
 91 A.D.2d 1198, 1199, 459 N.Y.S.2d 336 (4th Dep’t 1983). “Prejudice, of course, is not found in the mere exposure of the defendant to greater liability. Instead there must be some indication that the defendant has been hindered in the preparation of [its] case or has been prevented from taking some measure in support of his position.”
 
 Loomis,
 
 54 N.Y.2d at 23, 444 N.Y.S.2d 571, 429 N.E.2d 90.
 

 It is clear that no prejudice exists to defendant beyond exposure to greater liability. GM has been aware of plaintiffs claim for $10 million in punitive damages since the inception of this litigation. Further, defendant has failed to specify why it would sustain any undue prejudice from the increased punitive damages claim. Accordingly, leave to amend the complaint is granted.
 

 
 *167
 

 CONCLUSION
 

 Therefore, it is
 

 ORDERED, that
 

 1. Defendant’s motion for summary judgement is DENIED;
 

 2. Defendant’s motion to preclude any evidence suggesting the removal of the seat belt assembly from the Pesce vehicle by GM is GRANTED;
 

 3. Defendant’s motion to preclude evidence pertaining to the shoulder belt retractor and “D” ring is DENIED;
 

 4. Defendant’s motion to preclude evidence of the recall and recall letter pertaining to the Pesce vehicle is DENIED; and
 

 5. Plaintiff’s cross motion to amend the punitive damages clause of the complaint from $10 million to $30 million is GRANTED.
 

 IT IS SO ORDERED.
 

 [1]
 

 . "QUESTION: Do you recall what the date of [the defective retractor] report was?
 

 ANSWER: It was somewhere between [19]86 and 90 I would guess, but I don’t remember
 

 specifically what the date was.” (O'Neill dep. p. 27 ¶ 3-7.)