**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARK N. SILVESTRI,
Plaintiff-Appellant,

v.                                                              No. 99-2142

GENERAL MOTORS CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-97-4214-WMN)

Argued: March 2, 2000

Decided: April 21, 2000

Before WIDENER, NIEMEYER, and TRAXLER, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Widener and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Marc Seldin Rosen, SCANLAN, ROSEN & SHAR,
L.L.C., Baltimore, Maryland, for Appellant. Brigit M. Macksey,
PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore,
Maryland, for Appellee. **ON BRIEF:** Proctor D. Robison, Ann Arbor,
Michigan, for Appellant. Eric S. Namrow, PIPER, MARBURY,
RUDNICK & WOLFE, L.L.P., Washington, D.C., for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Mark Silvestri filed this products liability action against General Motors Corporation, alleging that the air bag in a 1995 Chevrolet Monte Carlo he was driving did not deploy as warranted when he crashed into a utility pole and that, as a result, his injuries from the accident were enhanced. The district court granted General Motors' motion for summary judgment, concluding that without the testimony of a qualified air bag expert, Silvestri could not offer competent testimony to make out a prima facie case that the air bag was defective. We vacate the summary judgment and remand because, under applicable New York law, a plaintiff may make out a prima facie products liability case circumstantially without direct evidence of a product defect.

I

On November 5, 1994, Mark Silvestri was involved in a single vehicle crash in Preble, New York. Driving a 1995 Chevrolet Monte Carlo at a speed estimated by experts for both sides to be approximately 72 mph, Silvestri lost control of the vehicle on a curve and slid off the road. His car slid sideways through a split-rail fence and, moving now at 67 mph, as calculated by Silvestri's expert, obliquely hit a utility pole with the front center of his car. The car spun around the pole, which acted as a fulcrum, and continued for some distance beyond into the front yard of a residence. The oblique impact with the utility pole caused a V-shaped depression in the front center of the automobile approximately 18 inches deep, as estimated by Silvestri's expert, causing the frame of the vehicle to buckle and moving the utility pole at ground level about 4 inches. The vehicle's air bag did not deploy during the accident and, although Silvestri was wearing his seat belt, he sustained severe facial lacerations and bone fractures and is disfigured as a result. At the time of the accident, the 1995 Monte Carlo was new, registering only 5,627 miles on its odometer.

Silvestri retained two accident reconstruction experts who examined the car and visited the accident scene approximately one week after the accident. They inspected the scene and took measurements

2

and photographs. They also retained a land surveyor who prepared a survey of the scene. Based on the experts' inspections of the car, the skid marks, the accident scene, the survey, and computer calculations, they each rendered the opinion that when the front of Silvestri's vehicle obliquely hit the utility pole, the impact to the front of the vehicle was equivalent to a 24 mph head-on collision with a fixed barrier -- the "barrier impact speed." They explained that the barrier impact speed essentially measures the head-on rate of deceleration at the front of the vehicle, taking into account the "give" in both the object into which the car crashes and the car itself as it crumples. They calculated the vehicle's barrier impact speed by taking into account the forward speed of the vehicle, the angle of impact with the utility pole, and the extent of damage to the front of the vehicle.

These experts concluded that the failure of the air bag to deploy at a barrier impact speed of 24 mph was inconsistent with General Motors' statement in the Monte Carlo's owner's manual about when the air bag would deploy. The owner's manual for the vehicle provides:

> When should the air bag inflate?
>
> The air bag is designed to inflate in moderate to severe frontal or near-frontal crashes. The air bag will inflate only if you're going fast enough. For example, if your vehicle goes straight into a wall that doesn't move or deform, the air bag will inflate at between 9 and 15 mph. . . . However, if your vehicle strikes something that will move or deform, such as a parked car, your air bag will inflate only at a higher speed. The air bag is not designed to inflate in rollovers, side impacts, or rear impacts, because inflation would not help the occupant.

Finally, these experts concluded that Silvestri's severe facial injuries would not have occurred had the air bag functioned properly. In reaching that conclusion, they rejected as inaccurate an accident reconstruction provided by General Motors suggesting that Silvestri's face was struck by a fence rail.

Because Silvestri allowed his insurance company to repair and sell the vehicle after the investigation by his experts, General Motors was

3

able to inspect the vehicle only after the repairs were completed. General Motors' air bag inspector analyzed the information from the air bag's "sensing and diagnostic module," which constantly monitors and diagnoses the air bag's components, including its electronic sensors that cause the air bag to deploy during certain collisions, and found that the module had not recorded any faults. He concluded that the air bag system performed as designed during Silvestri's accident and that the air bag was not designed to deploy under the conditions of the accident. Recognizing that the air bag system was "designed to deploy in a frontal barrier impact of 9 to 14 miles per hour," General Motors' expert formed an opinion that because the front of the vehicle had struck the utility pole obliquely or sideways, the car's change in speed and its sideways direction did not produce the conditions under which the air bag was designed to deploy.

Challenging the crashworthiness of the 1995 Monte Carlo, Silvestri brought this diversity-jurisdiction action against General Motors under theories of negligence, breach of implied warranty, breach of express warranty, strict liability, and res ipsa loquitur, alleging that the Monte Carlo's air bag system was defective because it did not deploy during the accident and that the air bag's failure to deploy enhanced his injuries. Following General Motors' motion for summary judgment, the parties presented the district court with the reports of their experts as well as backup data, calculations, photographs, and other evidence. While Silvestri presented the reports of his reconstruction experts, he did not present expert testimony on air bag design, explaining that he did not dispute the expert testimony provided by General Motors describing how air bags are designed and how they function. Indeed, Silvestri advised the court that he planned to offer General Motors' testimony to explain the air bag's design. Silvestri's opposition to General Motors' motion was based on the contention that the air bag did not perform as intended, i.e., as warranted in the owner's manual, and that there was no other cause for his enhanced injuries.

The district court granted General Motors summary judgment, concluding that Silvestri could not meet his burden of establishing a prima facie case because his reconstruction experts lacked "sufficient knowledge of the design, manufacture, assembly or engineering of air bag systems to qualify them to render an expert opinion regarding the

4

alleged defect in this case." The court explained, "Without the assistance of expert testimony, any lay determination regarding the nondeployment of the air bag is outside the realm of juror understanding and is therefore impermissibly speculative." Based on its conclusion that Silvestri "cannot establish a prima facie case without the use of competent expert testimony," the court entered summary judgment in favor of General Motors. This appeal followed.

II

The parties agree that New York substantive law should govern the disposition of this case. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that federal courts must apply the choice-of-law principles of the state in which they sit); Hauch v. Connor, 453 A.2d 1207, 1209-10 (Md. 1983) (holding that Maryland adheres to the choice-of-law rule of lex loci delicti, under which courts must apply the substantive tort law of the state in which the injury occurs). In this case, the accident occurred and the injury was sustained in the State of New York.

Under New York law, a plaintiff in a products liability case is not required to prove a specific defect, "especially where the product is complicated in nature." Codling v. Paglia, 298 N.E.2d 622, 625 (N.Y. 1973). The plaintiff may prove that the product was defective through circumstantial evidence if he (1) establishes that"the product has not performed as intended" and (2) excludes "all causes of the accident not attributable to [the] defendant." Halloran v. Virginia Chemicals, Inc., 361 N.E.2d 991, 993 (N.Y. 1977). These requirements, slightly modified, apply as well to second collision cases (crashworthiness cases), in which the plaintiff does not claim that the defect caused the accident itself, but rather that the defect enhanced or aggravated his injuries. See Pesce v. General Motors Corp., 939 F. Supp. 160, 162-64 (N.D.N.Y. 1996). To prove circumstantially a products liability claim grounded in the second collision doctrine, a plaintiff must show that the product did not perform as intended and must exclude all causes of his enhanced injuries not attributable to the defendant. See Pesce, 939 F. Supp. at 164.

To establish that the air bag did not function as intended in this case, Silvestri presented evidence that General Motors represented in

5

the owner's manual for the 1995 Monte Carlo that the air bag would deploy "in moderate to severe frontal or near-frontal crashes" and that if the vehicle were to crash, for example, straight into an immovable wall at between 9 and 15 mph, the air bag would inflate. Silvestri also presented expert testimony from two accident reconstruction experts that he collided with the utility pole at a speed equivalent to a 24-mph direct impact into an immovable wall, and that the air bag did not inflate. Moreover, he noted that General Motors did not contend that the air bag was in any way altered from its original state before the accident. The district court acknowledged that Silvestri's experts had extensive experience and knowledge in the area of accident reconstruction and that their opinions about the frontal impact speed of Silvestri's car could be considered to fall within the purview of their expertise. See General Elec. Co. v. Joiner, 522 U.S. 136, 141-43 (1998) (holding that district court has discretion in determining whether to receive expert testimony).

To exclude causes of his enhanced injury not attributable to General Motors' product, Silvestri offered the testimony of his experts that Silvestri's injuries were caused by the nondeployment of the air bag. Their opinions challenged all of General Motors' assertions regarding causes of Silvestri's facial injuries not attributable to the functioning of the air bag, particularly General Motors' contention that a portion of a fence entered the passenger compartment of the vehicle and struck his face.

Neither element essential to establish a prima facie case under New York law would appear to require proof of what occurred within the air bag system itself. Accordingly, Silvestri was not required to provide expert testimony as to how the air bag actually performed or why it did not inflate. Rather, New York law establishes that a plaintiff need merely prove that the product did not perform as intended and must exclude all causes of the relevant injuries not attributable to the defendant. See Pesce, 939 F. Supp. at 162; Halloran, 361 N.E.2d at 993. If a plaintiff meets these burdens, circumstantial proof is sufficient under New York law to establish a prima facie case in a products liability suit.

Factual evaluations about the existence of a product defect and its causation may often be difficult or in some cases impossible without

6

the testimony of a witness with scientific or technical expertise. See Fed. R. Evid. 702. But in order to justify dismissing a case because the plaintiff has failed to present expert testimony, a court must find that the facts necessary to establish a prima facie case cannot be presented to any reasonably informed factfinder without the assistance of expert testimony.

While the district court acknowledged that the testimony of Silvestri's experts might be received to provide evidence on the reconstruction of the accident's events, it determined that these experts "lack[ed] the requisite experience or understanding to proffer an opinion regarding whether the air bag failed to deploy as it was intended or whether there were other causes effecting the nondeployment of the air bag in the present case." The court reasoned, "Without the assistance of expert testimony, any lay determination regarding the nondeployment of the air bag is outside the realm of juror understanding and is therefore impermissibly speculative." But Silvestri argues persuasively that under New York law, he is not required to provide an explanation of why the air bag did not deploy, nor is he required to demonstrate any defect with direct evidence. He maintains correctly that he can employ the proof scheme established for presenting a circumstantial case.

In this case, Silvestri presented evidence (1) that the air bag was intended to deploy in a frontal crash with a barrier at a speed of 9-15 mph, as represented to lay persons in the vehicle's owner's manual, (2) that his crash with the utility pole was the equivalent of a barrier crash at a speed of 24 mph, and (3) that the air bag did not deploy. He also presented evidence to demonstrate that his enhanced injuries were not caused by factors other than the nondeployment of the air bag itself. Moreover, there was no evidence of prior tampering or misuse of the air bag. Under New York law, these facts are sufficient to entitle a jury to "infer" that a defect in the air bag caused Silvestri's enhanced injuries. See Pesce, 939 F. Supp. at 162; Halloran, 361 N.E.2d 993; Codling, 298 N.E.2d at 625.

Any evidence offered by General Motors that the air bag did not contain a defect could only tend to counter Silvestri's circumstantial evidence and thus render inappropriate his reliance on the inference. Indeed, in this case General Motors' experts examined the air bag

7

device and were unable to find any defect within the electronic mechanisms themselves. These experts gave the opinion that the circumstances under which the air bag was designed to deploy were not present during Silvestri's accident. But these facts do no more than create a triable question of fact under New York law. See Codling, 298 N.E.2d at 625 ("Chrysler [laid] great stress on the alleged failure of proof of any specific defect in the power steering system and the inadequacy of plaintiffs' tests to prove the defect.. . . These issues were fairly put to the jury"). It may well be that General Motors will be able to persuade a jury that the air bag in this case performed exactly as it was designed to perform because of the nature of the impact of Silvestri's vehicle with the utility pole. But because Silvestri has made out a prima facie case based on circumstantial evidence of a defect, this issue cannot be resolved on summary judgment.

III

General Motors urges us to affirm the judgment of the district court on the basis of Silvestri's alleged spoliation of evidence because he repaired the automobile without giving General Motors an opportunity to inspect it before the repairs. We decline, however, to reach that issue because even if the doctrine of spoliation applies to the circumstances of this case, the district court has broad discretion to address the matter, and in this case, the district court did not address spoliation in its ruling on General Motors' motion for summary judgment.

For the foregoing reasons, we vacate the judgment of the district court and remand the case for further proceedings.

VACATED AND REMANDED

8