[869 NE2d 654, 838 NYS2d 478]

Margarita Rivera, Respondent, v Katte Anilesh, D.D.S., et al., Defendants, and Indu Anilesh, D.D.S., Appellant.

Argued May 3, 2007; decided June 12, 2007

**POINTS OF COUNSEL**

*Landman Corsi Ballaine & Ford P.C.*, New York City (*William G. Ballaine* and *Sophia Ree* of counsel), for appellant. I. Applying governing New York case law, defendant's custom and practice testimony is admissible to establish her conduct when she treated plaintiff. (*Halloran v Virginia Chems.*, 41 NY2d 386; *Rigie v Goldman*, 148 AD2d 23; *Nigro v Benjamin*, 155 AD2d 872; *Greenberg v New York City Tr. Auth.*, 290 AD2d 412; *Biesiada v Suresh*, 309 AD2d 1245; *Gier v CGF Health Sys.*, 307 AD2d 729; *Witherel v Balling Constr.*, 99 AD2d 646; *Gushlaw v Roll*, 290 AD2d 667; *Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203; *Orloski v McCarthy*, 274 AD2d 633, 95 NY2d

767.) II. Plaintiff should be precluded from objecting to the admissibility of defendant's custom and practice testimony on appeal. (*First Intl. Bank of Israel v Blankstein & Son*, 59 NY2d 436; *Akamnonu v Rodriguez*, 12 AD3d 187; *Sam v Town of Rotterdam*, 248 AD2d 850, 92 NY2d 804.) III. The motion court properly granted defendant summary judgment dismissing plaintiff's dental malpractice claims. (*Alvarez v Prospect Hosp.*, 68 NY2d 320; *Matosic v Gelb*, 232 AD2d 221; *Diaz v New York Downtown Hosp.*, 99 NY2d 542; *Zuckerman v City of New York*, 49 NY2d 557; *Hooke v Speedy Auto Ctr.*, 4 AD3d 110; *Parker v Mobil Oil Corp.*, 7 NY3d 434; *DeCicco v Roberts*, 202 AD2d 165; *Pasquale v Miller*, 194 AD2d 597.)

*Capriano Lichtman & Flach, LLP*, New York City (*Michael H. Skliar* of counsel), for respondent. I. Plaintiff should not be precluded from addressing the Appellate Division's majority opinion. (*Sega v State of New York*, 60 NY2d 183; *Chateau D' If Corp. v City of New York*, 219 AD2d 205; *Matter of Daubman v Nassau County Civ. Serv. Commn.*, 195 AD2d 602.) II. The decision by the majority in the Appellate Division was correctly decided. (*Halloran v Virginia Chems.*, 41 NY2d 386; *Rigie v Goldman*, 148 AD2d 23; *Ferrer v Harris*, 55 NY2d 285; *Gushlaw v Roll*, 290 AD2d 667; *Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203; *Acevedo v New York City Health & Hosps. Corp.*, 251 AD2d 21, 92 NY2d 808; *Nigro v Benjamin*, 155 AD2d 872; *Biesiada v Suresh*, 309 AD2d 1245.) III. Defendant's custom and practice testimony only raises, at best, an inference and cannot by itself support the granting of summary judgment. (*Lindeman v Slavin*, 184 AD2d 910; *Kindelan v Society of N.Y. Hosp.*, 277 AD2d 75.) IV. In the alternative, questions of fact preclude granting of summary judgment as to defendant Indu Anilesh. (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Miller v Long Is. Light. Co.*, 166 AD2d 564; *Halkias v Otolaryngology-Facial Plastic Surgery Assoc.*, 282 AD2d 650; *Speller v Sears, Roebuck & Co.*, 100 NY2d 38; *Sisko v New York Hosp.*, 231 AD2d 420; *Parker v Mobil Oil Corp.*, 7 NY3d 434.)

*LeBoeuf, Lamb, Greene & MacRae LLP*, New York City (*John M. Aerni* and *Carol A. Lafond* of counsel), for New York State Dental Association and another, amici curiae. Habit evidence is admissible in professional malpractice actions in accordance with the standard enunciated in *Halloran v Virginia Chems.* (41 NY2d 386 [1977]). (*Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203; *Gushlaw v Roll*, 290 AD2d 667; *Acevedo v*

*New York City Health & Hosps. Corp.*, 251 AD2d 21; *Rigie v Goldman*, 148 AD2d 23; *Nigro v Benjamin*, 155 AD2d 872; *Biesiada v Suresh*, 309 AD2d 1245; *Lindeman v Slavin*, 184 AD2d 910.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Pamela Seider Dolgow, Amy London* and *John Hogrogian* of counsel), for City of New York and another, amici curiae. Custom and practice testimony about deliberate and repetitive procedures is admissible in professional malpractice actions as evidence of behavior on a particular occasion. (*Halloran v Virginia Chems.*, 41 NY2d 386; *Biesiada v Suresh*, 309 AD2d 1245; *Orloski v McCarthy*, 274 AD2d 633, 95 NY2d 767; *Rigie v Goldman*, 148 AD2d 23; *Gushlaw v Roll*, 290 AD2d 667; *Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203; *Acevedo v New York City Health & Hosps. Corp.*, 251 AD2d 21, 92 NY2d 808.)

*Kramer, Dillof, Livingston & Moore*, New York City (*Matthew Gaier* and *Brian J. Isaac* of counsel), for New York State Trial Lawyers' Association, amicus curiae. The well-established law of this state permits the admission of evidence during a trial of a doctor's custom and practice upon a showing of a deliberate, repetitive, and consistent response under like circumstances based upon a sufficient number of instances to give rise to an inference of its persistence. (*Matter of Brandon*, 55 NY2d 206; *Coopersmith v Gold*, 89 NY2d 957; *Castracane v Campbell*, 300 AD2d 704; *Locapo v Suffolk County Water Auth.*, 284 AD2d 505; *Zucker v Whitridge*, 205 NY 50; *Warner v New York Cent. R.R. Co.*, 44 NY 465; *Hartley v Szadkowski*, 32 AD2d 550; *Halloran v Virginia Chems.*, 41 NY2d 386; *People v Mertz*, 68 NY2d 136; *Rigie v Goldman*, 148 AD2d 23.)

**OPINION OF THE COURT**

GRAFFEO, J.

In this malpractice action by a patient against her dentist, we are asked whether the dentist's routine procedure for administering an anesthetic injection is admissible as habit evidence supporting an inference that the same procedure was used when treating the patient. Based on the record before us, we conclude that the habit and routine practice testimony is admissible.

I

Plaintiff Margarita Rivera had been a patient of defendant Dr. Indu Anilesh, a dentist, since 1991. On May 4, 2000, Rivera went to Dr. Anilesh's office with complaints related to a molar

on the lower left-side of her jaw (tooth number 20). Dr. Anilesh determined that the tooth required extraction because it had a fractured restoration, was mobile in three planes and there was a loss of bone beneath the tooth. After discussing the extraction procedures with Dr. Anilesh, Rivera agreed that the tooth should be removed.

Before beginning the extraction, Dr. Anilesh performed a "lower left mandibular block injection" in order to numb the area near tooth number 20. According to Rivera, she continued to have sensation in this location after the injection so Dr. Anilesh gave her a second injection of the anesthetic. When Dr. Anilesh did so, Rivera claims she experienced extreme pain that felt like an electric shock. The injections sufficiently numbed Rivera's mouth and the extraction was completed.

During the four days following the procedure, Rivera purportedly developed a fever, had pain in her mouth that prevented her from eating and experienced increased swelling in her face. As a result, she returned to visit Dr. Anilesh on May 8, 2000. Dr. Anilesh prescribed antibiotics, pain medication and a mouthwash. Rivera states that she took the medicine as directed but that it did not relieve her pain. After several days, she returned to Dr. Anilesh and was referred to an oral surgeon.

The surgeon who treated Rivera concluded that her pain was emanating from the left temporomandibular joint (TMJ). He instructed Rivera to eat soft foods and prescribed an anti-inflammatory drug and a muscle relaxer for her. During a follow-up appointment a week later, Rivera told the surgeon that her mouth felt better and that she had a full range of motion in her jaw, although she still felt some pain from the TMJ. Based on this progress, the surgeon discontinued the muscle relaxer and advised Rivera to return for treatment as needed.

Two weeks later, Rivera again visited the surgeon's office and was seen by a different oral surgeon. Rivera reported that she still felt pain in her mouth and could not open her jaw completely. The doctor applied a local anesthetic and moist heat to the area that was painful. A week later, Rivera could barely open her mouth. She was examined by a third oral surgeon, who referred her to a local hospital. The physicians at the hospital diagnosed a severe infection in Rivera's jaw that required her to be hospitalized for approximately three weeks.

Rivera commenced this action against Drs. Indu and Katte Anilesh, as well as the first two oral surgeons who treated her.[1] Rivera's complaint asserted causes of action for malpractice and lack of informed consent. As to the malpractice claim, Rivera alleged that Dr. Anilesh negligently performed the injections of anesthesia and extraction of the tooth, and failed to properly manage the ensuing infection.

Dr. Anilesh moved for summary judgment dismissing the complaint, relying on her deposition testimony and an affirmation from another oral surgeon. Dr. Anilesh testified that she did not recollect treating Rivera for the problem with tooth number 20 and, therefore, she could not recall what had occurred during the extraction. She did, however, state that the administration of this type of injection was a "routine procedure[ ]" that she did "every day" to "at least three to four or five" patients and that she had been practicing as a dentist since 1982. Dr. Anilesh further explained that a second injection of anesthesia was required in 15% to 20% of her cases. She provided a step-by-step description of the procedure she used to give injections to her patients and claimed that, when a second injection was necessary, she administered it at the same site as the first injection. Dr. Anilesh noted that if a patient complained of unusual pain or any other unexpected events occurred during treatment, she would make a notation in the patient's medical chart but that no such note existed for Rivera. Dr. Anilesh's expert opined that Dr. Anilesh's treatment of Rivera was within the applicable standard of care in dentistry.

Rivera's opposition to the motion for summary judgment was premised on her testimony that the second injection of anesthetic had caused her pain. She also submitted an expert affirmation from a dentist who averred that Dr. Anilesh had deviated from the accepted standard of care because a properly administered second injection in the same location as a first injection would not cause a patient any pain because that part of the mouth would already be numb from the first injection. The expert concluded that since Rivera felt pain, Dr. Anilesh could not have injected the second course of anesthesia in the proper location. Rivera's expert therefore opined that the second injection was "much more likely to result in a subsequent infec-

---

1. The claims against Dr. Katte Anilesh (the husband of Dr. Indu Anilesh) were later discontinued by stipulation and the claims against the oral surgeons were dismissed.

tion than an injection in the proper location" because it could cause a hematoma to form, increasing Rivera's susceptibility to an infection. Based on the proximity of the extraction site to the area of the infection, Rivera's expert determined that the wrongly administered second injection—not the extraction of tooth number 20—caused the introduction of bacteria and led to the infection.

Supreme Court granted Dr. Anilesh's motion for summary judgment. The court found that Dr. Anilesh's deposition testimony and her expert affirmation established that she acted in accordance with generally accepted dental practices. The court also held that, even if Dr. Anilesh gave the second shot in the wrong location, the opinion of Rivera's expert that this could result in an infection was speculative and insufficient to preclude summary judgment.

The Appellate Division reversed and denied summary judgment in a divided decision.[2] The majority concluded that Dr. Anilesh's testimony about her customary practice for administering anesthesia was inadmissible and could not be used to raise an inference that Dr. Anilesh adhered to her habitual protocols when she treated Rivera. Two Justices agreed that summary judgment should not have been granted, but determined that Dr. Anilesh's testimony regarding her routine technique for administering anesthetic injections was admissible because the procedure was deliberate and repetitive, and Rivera failed to offer any evidence that the protocol for administering such an injection varied with a patient's individual circumstances. The concurring Justices, however, found that Rivera's statement that she was injected twice, coupled with the opinion of her expert that the second injection was given in the wrong location, created an issue of fact as to whether Dr. Anilesh adhered to accepted standards of care. The Appellate Division granted Dr. Anilesh's application for leave to appeal to this Court and certified the following question to us: "Was the order of this Court, which reversed the order of Supreme Court, properly made?"

## II

In *Halloran v Virginia Chems.* (41 NY2d 386, 391 [1977]), we explained that "evidence of habit has, since the days of the

---

**2.** Rivera did not challenge the dismissal of the cause of action premised on lack of informed consent and that portion of the appeal was deemed abandoned by the Appellate Division.

common-law reports, generally been admissible to prove conformity on specified occasions" because "one who has demonstrated a consistent response under given circumstances is more likely to repeat that response when the circumstances arise again." The applicability of this doctrine is limited to cases where the proof demonstrates "a deliberate and repetitive practice" by a person "in complete control of the circumstances" (*id.* at 392) as opposed to "conduct however frequent yet likely to vary from time to time depending upon the surrounding circumstances" (*id.* at 389). If these conditions are satisfied, "a party should be able, by introducing evidence of such habit or regular usage, to allow the inference of its persistence . . . on a particular occasion" (*id.* at 392).

The plaintiff in *Halloran*, an automobile mechanic, had a practice of heating cans of Freon before transferring the gas to automobile air conditioning systems, contrary to the warnings on the labels. The plaintiff was injured when a can exploded after being heated. The manufacturer of the refrigerant sought to introduce evidence that the plaintiff had a habit of heating the cans by placing them into a container of water heated by an immersion coil. The plaintiff admitted using warm tap water on the day of the explosion, but denied that he used an immersion coil. Because there was evidence that the plaintiff had serviced hundreds of air conditioning units and handled thousands of cans of Freon, we observed that if the evidence tended to demonstrate that the plaintiff paired this practice with using an immersion coil on a sufficient number of occasions, such evidence would be admissible to raise an inference that an immersion coil was used on the day of the accident.

Aside from *Halloran*, we have had few opportunities to consider the contours of the habit evidence rule (*see Ferrer v Harris*, 55 NY2d 285, 294 [1982] [evidence that mother had told her daughter not to cross the street without looking for cars was not admissible as habit evidence because the plaintiff made no showing of "a persistent habit or regular usage by one in control of the circumstances in which it is employed"]) and none have occurred in the context of medical or dental procedures. The Appellate Divisions have generally adopted the proposition that normal documentation and notification protocols,[3]

---

**3.** *See e.g. Gier v CGF Health Sys.*, 307 AD2d 729 (4th Dept 2003) (evidence that it was normal protocol to notify the on-call attending physician at

routine warnings to patients[4] and the processes for undertaking certain noninvasive medical procedures[5] can qualify as habit evidence. In contrast, evidence concerning a physician's surgical practices has been deemed inadmissible under the theory that every surgery is necessarily unique and varies depending on the nature of the patient's medical condition and the actions of the doctor.[6]

Without commenting on the propriety of these decisions, the record here supports the admissibility of Dr. Anilesh's routine procedure for administering injections of anesthesia under the standard articulated in *Halloran* in light of the frequency that this technique was used in Dr. Anilesh's dental practice and the nature of the routine conduct.[7] Dr. Anilesh explained that she gave this type of injection every day to three to five patients and that she had been practicing as a dentist since 1982. Even by a conservative estimate, this testimony would indicate that Dr. Anilesh performed this procedure in the same manner thousands of times.

Nor do we believe that the nature of this injection process renders it unsuitable for consideration as habit evidence. Dr. Anilesh described the specific procedure that she used when injecting an anesthetic and her expert confirmed that this procedure was within the accepted standard of care for dentistry. Relatedly, there is no evidence suggesting that Dr. Anilesh's pre-extraction injection procedure would vary from patient to patient depending on the particular medical circumstances or physical condition of the patient. This record therefore contains "proof of a deliberate and repetitive practice"—the mundane

the time of a patient's admission); *Orloski v McCarthy*, 274 AD2d 633 (3d Dept 2000) (testimony of a custom for documenting patient complaints and maintaining medical records), *lv denied* 95 NY2d 767 (2000).

4. *See e.g. Soltis v State of New York*, 188 AD2d 201 (3d Dept 1993); *Rigie v Goldman*, 148 AD2d 23 (2d Dept 1989).

5. *See e.g. Biesiada v Suresh*, 309 AD2d 1245 (4th Dept 2003) (testimony concerning the protocol for transferring a stroke patient from a supine to a seated position); *Nigro v Benjamin*, 155 AD2d 872 (4th Dept 1989) (testimony concerning the protocol the defendant followed when conducting breast examinations).

6. *See e.g. Gushlaw v Roll*, 290 AD2d 667 (3d Dept 2002) (extraction of wisdom tooth); *Glusaskas v John E. Hutchinson, III, M.D., P.C.*, 148 AD2d 203 (1st Dept 1989) (videotape of subsequent surgery on different patient).

7. *See e.g. Wilson v Volkswagen of Am., Inc.*, 561 F2d 494, 511 (4th Cir 1977) (in determining admissibility, "the key criteria are 'adequacy of sampling and uniformity of response,'" quoting Fed Rules Evid rule 406, Advisory Comm Notes), *cert denied* 434 US 1020 (1978).

administration of a local anesthetic prior to a relatively routine tooth extraction—by a trained, experienced professional "in complete control of the circumstances" (*Halloran*, 41 NY2d at 392). We conclude that Dr. Anilesh's habit evidence was properly considered by Supreme Court in conjunction with the motion for summary judgment and that it was sufficient to shift the burden to Rivera to provide evidence creating an issue of fact as to whether Dr. Anilesh committed malpractice.

Rivera's proof satisfied her burden by raising factual issues that require a trial. Her testimony that she experienced extreme pain during the second injection, together with her expert's opinion that the pain Rivera felt demonstrated that the second injection was administered improperly, raises a question of fact whether Dr. Anilesh negligently performed the injection. Although Dr. Anilesh argues that Rivera failed to proffer any evidence, aside from the opinion of her expert, that the alleged negligence caused the infection, the expert explained why the infection could not have originated from the site of the extracted tooth and stated that an injection in the wrong place could cause a hematoma that materially increased the possibility of an infection like the one that developed in Rivera's jaw. Consequently, a jury must determine whether Dr. Anilesh committed malpractice and, if so, whether her negligence was the proximate cause of Rivera's infection.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, etc.