Guido v Fielding (2020 NY Slip Op 06391)





Guido v Fielding


2020 NY Slip Op 06391


Decided on November 10, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 10, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith J. Gische,J.P.,
Jeffrey K. Oing
Anil C. Singh
Manuel J. Mendez, JJ.


Index No. 302654/11 Appeal No. 11913,11913A Case No. 2019-03487 

[*1]Maria Guido et al., Plaintiffs-Appellants,
v
George Fielding, M.D., et al., Defendants-Respondents, Christine Ren-Fielding, M.D., et al., Defendants.



Plaintiffs appeal from an order of the Supreme Court, Bronx County (Joseph E. Capella, J.), entered on or about January 4, 2019, which, to the extent appealed from as limited by the briefs, granted defendants George Fielding, M.D., NYU Langone Medical Center, and NYU School of Medicine's motion for summary judgment dismissing the claim of failure to diagnose and repair a bowel perforation intraoperatively. Plaintiffs also appeal from an order, same court and Justice, entered on or about March 27, 2019, which denied plaintiffs' motion for reargument.




Scaffidi & Associates, New York (Anthony J. Scaffidi, Robert M. Marino and Kevin B. Lynch of counsel), for appellants.
Aaronson Rappaport Feinstein & Deutsch, LLP, New York (Elliot J. Zucker of counsel), for respondents.



GISCHE, J.P. 


Plaintiff, Maria Guido, suffered a perforation of her bowel during a LAP-Band procedure. The issue on this appeal concerns only her claim that the perforation should have been discovered intraoperatively during the LAP-Band procedure. It is undisputed that the perforation was discovered within days, while she was recovering in the hospital, and corrective surgery was immediately performed thereafter. Plaintiff has additional claims asserted both with respect to the original LAP-Band surgery and subsequent corrective surgery, that are still pending before the trial court.
Defendants moved for summary judgment, relying on: the deposition testimony of Dr. Fielding, medical records, including Dr. Fielding's operative notes, and their expert's opinion. Insofar as relevant to this appeal, the expert's opinion was partly based on Dr. Fielding's deposition testimony that during open LAP-Band procedures, he generally examines a patient's bowel, both visually and through palpitation, before he completes the procedure and closes the patient. During his deposition, Dr. Fielding testified that he did not remember plaintiff, and that he did not have any independent recollection of her particular LAP-Band surgery. Dr. Fielding did independently recall the second corrective surgery he performed on her. Dr. Fielding stated that he had performed hundreds of laparoscopic and other bariatric surgeries over the years. Dr. Fielding testified that this specific surgery had started as a laparoscopic procedure, but then it had to be converted to an open surgery because plaintiff had many adhesions. Dr. Fielding also testified, based upon those same medical records, that plaintiff had undergone numerous prior abdominal surgeries and they had resulted in very dense adhesions where the bowel was stuck to the wound. Still relying on medical records, Dr. Fielding testified that he used scissors to dissect the bowel. He then proceeded to complete the placement of the LAP-Band and that the placement proceeded in the same manner as it would have with a laparoscopic surgery.
When asked to more completely describe the process of dissecting the bowel from the wound, Dr. Fielding testified that he did not remember, but then proceeded to describe his usual custom and practice in doing so, which would have included a visual inspection of the bowel. When asked whether he did anything else to see whether there was damage to the bowel, Dr. Fielding testified that he would have been gently lifting, lysing and feeling the loops of the bowel as he snipped it away from the adhesions and looking for signs of yellow bile coming out of the bowel. Dr. Fielding's intraoperative report concerning the LAP-Band surgery contains no reference whatsoever to whether he visually examined the small intestine or any notation on the presence or absence of bile or other leaking intestinal matter. The medical records relating to the subsequent corrective surgery to remove the LAP-Band and correct a leak from the bowel, however, reflect that "the small intestines were carefully examined" and there is an entry by Dr. Fielding stating that he detected "no evidence of ongoing intestinal content leak . . . ." The corrective surgery operative report also states the discovery of a 0.5 cm incision in the small intestine that had been completely sealed off by the omentum, a thick layer of abdominal fat.
Defendants' expert opined that Dr. Fielding's treatment of plaintiff was proper in all respects and was in accordance with the standard of care at all times. The expert also stated that a perforation of the small bowel is a well-established, known and accepted complication and risk, of all abdominal surgical procedures, including adjustable gastric banding surgery and that in this case it was not the result of any malpractice or negligence committed by the doctor. The expert further opined that there was no deviation from accepted medical practice by Dr. Fielding in failing to detect the bowl perforation during the LAP-Band procedure and that Dr Fielding had utilized appropriate and proper surgical technique while closing the fascia in lysing and retracting the adhesions he encountered using both his hands and scissors under direct visualization. In rendering his opinion, the expert relied on the fact that, "no enteric contents [were] found or yellow bile visualized during the procedure . . . . "
Plaintiffs contend that because Dr. Fielding's deposition testimony regarding his
alleged custom and practice during LAP-Band surgery is not admissible evidence, his expert's opinion that relied on such evidence should have been disregarded.
A defendant makes a prima facie case of entitlement to summary judgment in a medical malpractice action by submitting an affirmation from a medical expert establishing that the treatment provided to the injured plaintiff comported with good and accepted practice or that the plaintiff was not injured thereby (see Mignoli v Oyugi, 82 AD3d 443 [1st Dept 2011]). An expert's opinion must be based upon information personally known to the expert, information in the court record or hearsay material, provided that it is of a kind accepted in the profession as reliable in forming a professional opinion or it comes from a witness that is subject to full cross-examination at trial (People v Goldstein, 6 NY3d 119 [2005], cert denied 547 US 1159 [2006]; Hambsch v New York City Tr. Auth. 63 NY2d 723 [1984]). Here, the only evidence regarding whether Dr. Fielding actually palpitated the bowel during the LAP-Band surgery is the doctor's testimony based on his custom. Dr. Fielding did not have any independent recollection of whether he actually palpated the bowel to rule out perforations during plaintiff's LAP-Band procedure, and nothing in the hospital records indicates that he did so.
In order for an expert's opinion based on habit testimony to be considered by a court on a doctor's motion for summary judgment in a medical malpractice action, a foundation must be laid for the admissibility of the underlying habit testimony (Goldson v Mann, 173 AD3d 410 [1st Dept 2019]). In general, evidence of conduct on other occasions is irrelevant to prove that a person performed a particular act on a different, unrelated occasion (Mazella v Beals, 27 NY3d 694 [2016]). Evidence of habit is, however, admissible to show that someone acted in conformity with that habit on a particular occasion. In order to qualify as a habit or routine practice, the proponent must show that it is a deliberative and repetitive practice by a person in complete control of the circumstances. Habit evidence is distinguishable from conduct, no matter how frequent, that is likely to vary from time to time depending on the circumstances (Rivera v Anilesh, 8 NY3d 627 [2007]; Halloran v Virginia Chems., 41 NY2d 386, 393 [1977]; see Guide to NY Evid rule 4.13 [Habit]). Habit or repetitive routine is admissible to fill in any "evidentiary gaps" involving that person in similar circumstances to infer they were handled the same way (Galetta v Galetta, 21 NY3d 186, 197 [2013]).
Where medical procedures are concerned, habit evidence is admissible to establish that routine or mundane procedures were followed. Some examples where evidence of a medical routine was found admissible include: a pre-extraction administration of a local anesthetic by a trained, experienced professional (Rivera v Anilesh, 8 NY3d at 636, citing Halloran at 392), the usual procedure followed in conducting a routine rectal exam (Orloski v McCarthy, 274 AD2d 633, 635 [3d Dept 2000], lv denied 95 NY2d 767 [2000]), and routine warnings about the risk of removing an impacted wisdom tooth (Rigie v Goldman, 148 AD2d 23, 24 [2d Dept 1989]) .
In order to lay a foundation for its admission, Dr. Fielding needed to establish that the practice of palpitating the bowel for perforations was routinely done by him in his open bariatric surgeries, and that it did not vary from patient to patient. He did not do so. He failed to offer testimony or provide any other proof regarding the number of times he had followed such a procedure during the hundreds of bariatric surgeries he had performed (see Rivera at 634-635; Martin v Timmins, 178 AD3d 107 [2d Dept 2019]). Nor did Dr. Fielding describe the LAP-Band procedure as being routine, without variation from patient to patient. Since Dr. Fielding did not lay a proper evidentiary foundation for his testimony based on custom and practice, and the expert's opinion was made in reliance on that testimony, defendants did not satisfy their burden of proving a prima facie case entitling them to summary judgment (Goldson v Mann, 173 AD3d at 411). Defendants' motion should have been denied, because they did not prove a prima facie case, that Dr. Fielding did not deviate from the accepted standard of care in failing to diagnose and repair plaintiff's bowel perforation intraoperatively (id.; see Anyie B. v Bronx Lebanon Hosp., 128 AD3d 1, 3 [1st Dept 2015]).
Plaintiffs' argument, that a foundation can never be laid for this habit evidence, is rejected. We only hold that the foundation for such evidence was not laid on this motion and the trial court is free to make an evidentiary ruling based upon the record developed before it at trial.
Alternatively, we find that even if an appropriate foundation was laid for the habit testimony that defendants' expert relied on, the motion for summary judgment still should have been denied. Where habit evidence is admitted, it only establishes that the claimed behavior or conduct was persistent and repeated in similar circumstances (Halloran v Virginia Chems., 41 NY2d at 392). Evidence of habit only provides a basis for the jury to draw an inference, but it cannot be the basis for judgment as a matter of law (see Lindeman v Slavin, 184 AD2d 910 [3d Dept 1992]). Plaintiffs' bariatric expert observed that although Dr. Fielding testified about how he usually performed LAP-Band surgeries, the doctor had no independent recollection of this patient who had previously undergone other abdominal surgeries. Although Dr. Fielding testified how he would have checked a patient's bowel during the surgery to see whether there was any perforation and leakage of its contents, plaintiffs' expert observed there was no mention of this in Ms. Guido's intraoperative records as having been done. The fact that Dr. Fielding usually inspects and palpates a patient's bowel does not conclusively prove that he did so on this occasion. There is an issue of fact whether the practice described by Dr. Fielding was followed by him in this particular case, calling into question whether the perforation could have been discovered had the procedure been followed (see Rivera at 635-636).
We add that the reply affirmation by defendants' expert raising a new opinion, that a perforation "might not" have been discoverable even if the bowel was palpated, should not have been considered by Supreme Court on this motion, because plaintiffs did not have an opportunity to address it (see Matter of Harleysville Ins. Co v Rosario, 17 AD3d 677 [2d Dept 2005]).
Accordingly, the order of the Supreme Court, Bronx County (Joseph E. Capella, J.), entered on or about January 4, 2019, which, to the extent appealed from as limited by the briefs, granted defendants George Fielding, M.D., NYU Langone Medical Center, and NYU School of Medicine's motion for summary judgment dismissing the claim of failure to diagnose and repair a bowel perforation intraoperatively, should be reversed, without costs, and the motion denied. The appeal from the order of the same court and Justice, entered on or about March 27, 2019, which denied plaintiffs' motion for reargument, should be dismissed, without costs, as taken from a nonappealable order.
All concur.
Order, Supreme Court, Bronx County (Joseph E. Capella, J.), entered on or about January 4, 2019, reversed, without costs, and the motion denied. Appeal from an order, same court and Justice, entered on or about March 27, 2019, dismissed, without costs, as taken from a nonappealable order.
Opinion by Gische, J.P. All concur.
Gische, J.P., Oing, Singh, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 10, 2020